UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LISA KAY LAKENEN,

       Plaintiff,                          Case No. 2:14-cv-155

v.                                            HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

       Defendant.
_____/

**OPINION**

In January 2011, plaintiff Lisa Kay Lakenen filed an application for disability and disability insurance benefits. See Transcript of Administrative Hearing at pages 224-230 (hereinafter Tr. at ___). Plaintiff alleges that she became disabled on November 4, 2009, due to back pain, left shoulder impairment, COPPED, migraines and psychological impairment. Plaintiff's application was denied initially on May 26, 2011, and plaintiff requested an administrative hearing before an Administrative Law Judge (ALL). Tr. at 171-72 . ALL Brent C. Be dwell held a hearing on January 11, 2013. Tr. at 68. Plaintiff and vocational expert Leslie Goldsmith testified at the hearing. On February 15, 2013, ALL Be dwell issued a decision denying plaintiff's request for disability benefits. Tr. at 52-63. Plaintiff filed a Request for Review of Hearing Decision/Order on April 3, 2013. Tr. at 48. On June 3, 2014, the Appeals Council denied plaintiff's request for a review of the ALL's

decision, making the ALL's decision the final decision of the Commissioner. Tr. at 1. Plaintiff then filed this action.[1]

At the hearing plaintiff testified that she has constant pain in her shoulder between her shoulder blades and in her neck. Tr. at 77. Plaintiff takes Oxycontin twice a day and Percocet four times a day. *Id*. Plaintiff testified that she can sit for about one half hour before she has to get up and move. Tr. at 79. Plaintiff can stand for about fifteen minutes before having to sit down. Tr. at 80. She can walk about one half block and lift a gallon of milk. *Id*. Plaintiff indicates that she experiences depression, which is probably from not being able to work. *Id*. She does not take medication for depression because she cannot tolerate antidepressants. *Id*. Plaintiff believes that without the pain she would not have depression. Tr. at 86. Plaintiff has made attempts to exercise, but each time she tries to exercise she ends up in bed for a few days because activity causes muscle pain. Tr. at 81.

Plaintiff left her medical clerk job because she was only able to work for about four hours a day before the pain became intolerable. Tr. at 82. She also experiences migraines at least once a month. Tr. at 83. She has had a migraine that lasted one month. Tr. at 84. However, her average migraine lasts three days. *Id*. She experiences rotator cuff pain than radiates down her arm to her wrist and sometimes her fingers. Tr. at 85. She has been diagnosed with COPD and uses an inhaler. The COPD causes tightness in her chest and back once or twice per month. *Id*. Plaintiff can climb twelve stairs but has to sit down for five minutes to catch her breath. Tr. at 86.

Plaintiff describes the pain in her back near her bra strap as a consistent nine, the pain in her shoulder blade area as a six, the pain in her neck as a six, and the pain in her shoulder as a four.

---

[1] Both parties consented to proceed before a Magistrate Judge on October 30, 2014.

Tr. at 87-88.  Exercise and cold make the pain worse.  Tr. at 88.  She has difficulty pulling, such as pulling charts in and out of racks.  *Id*.  Movement between the shoulder blades aggravates the pain.  *Id.*  She sleeps about six hours a day at night, and lays down about four times during the day and sleeps between 20 minutes and two hours.  Tr. at 89.  Plaintiff indicates that she does less household work and her husband is now doing more household chores.  Tr. at 90.

    The vocational expert testified that for a hypothetical individual of plaintiff's age, education and work experience, limited to unskilled light work who could sit or stand every fifteen minutes, could not climb ladders, ropes or scaffolds, and is limited to occasionally climbing ramps, climbing stairs, stooping, crouching, kneeling and crawling, who must avoid exposure to extreme cold, unprotected heights, hazards, and moving machinery, and who may be off task for ten percent of the day in addition to regularly scheduled breaks, there exists about 20,000 office clerks jobs, 10,000 food preparation jobs including 3,000 to 4,000 sit and stand light duty level positions, and 5,000 light and sedentary level security jobs in the Michigan economy.  Tr. at 97.  If the hypothetical individual was limited to low stress sedentary work in addition to the above limitations, the vocational expert testified that the number of positions available in the economy would be the same for office clerk jobs, for food service positions there would be about 5,000 jobs and for security positions there would be about 2,500 jobs.  Tr. at 98.  There exist no jobs in the economy for the hypothetical individual who needs to be off task more than 10% of the time.  *Id*.

    Plaintiff was seen by Dr. Katherine Lao, M.D., on January 14, 2009.  Tr. at 302.  Dr. Lao indicated that plaintiff suffered with disruptive thoracic spinal pain radiating to the left.  *Id*.  Dr. Vijay Singh, M.D., noted that plaintiff had multilevel disc displacement.  Tr. at 305.  Plaintiff received some relief from an epidural injection.  Tr. at 304-305.  On November 11, 2009, Dr. Lao noted that the epidural injection made plaintiff's pain worse.  Tr. at 308.  She further noted that while

3

plaintiff was getting some pain relief from her prescription pain medications, she has received more medications to control her pain.  Dr. Lao noted that there are concerns about developing an intolerance to pain mediation and that pain medication was not the solution to pain management.  *Id*.  Dr. Lao opined that plaintiff needed to work on her coping skills and activity modifications.  *Id*.  On December 2009, an MRI revealed stable mild cervical spondylosis.  Tr. at 310.  The MRI impression showed right paracentrial disc protrusions with mild cord flattening at T5-T6, T7-T8, and T8-T9.  Tr. at 313.

On February 22, 2011, Dr. Maria Carolina LD Espejo, M.D., reported that plaintiff complained of chronic neck pain and left shoulder and back pain.  Tr. at 334.  Plaintiff reported that physical therapy made her symptoms worse.  Tr. at 335.  Plaintiff felt that her symptoms had progressed since 2009 when she had her last MRI.  Tr. at 337.  Plaintiff received an MRI which revealed a disc protrusion at C5-6 with spur formation that was probably impinging her left C6.  She also had a C-7 radiculopathy.  Tr. at 333.  Dr. Espejo discussed pain management with plaintiff.  Id. Plaintiff received an MRI of her spine in April 2011.  Tr. at 372).  The MRI revealed unchanged prominent disc herniations at T5-6 through T8-9, as well as T2 signal loss from some of the other discs.  The MRI revealed unchanged disc degeneration.  *Id*.

On April 12, 2011, psychologists Barbara Halazon, Ph.D, LLP, and Margaret K. Cappone, Ph.D, issued a report at the request of the Disability Determination Service.  Tr. at 377-383. The report diagnosed plaintiff with adjustment disorder with mixed anxiety and depressed mood, low average IQ, chronic back and neck, chronic headaches, chronic stomachaches, not working, and overall decreased functional ability.  Tr. at 383.  Plaintiff was assessed with a GAF of 50 and guarded prognosis.  *Id*.  Dr. Richard C. Gause, M.D., examined plaintiff at the request of the Disability

Determination Service. Tr. at 387-390. Dr. Gause determined that plaintiff has degenerative disc disease, and a left rotator cuff injury. Tr. at 389.

Dr. Stuart K. Johnson wrote a "To whom it may concern" letter on April 19, 2011, indicating that he believed that it is difficult for plaintiff to be functional from a disability standpoint. Tr. at 407. Licensed Psychologist Ralph L. Olson, Ph.D, BCBA-D examined plaintiff and found that she had a mood disorder due to chronic back pain with depressive features. Tr. at 416. Dr. Olson gave plaintiff a GAF of 40. *Id*.

Dr. Johnson completed a physical residual functional capacity questionnaire for plaintiff on April 3, 2012. Tr. at 429-433. Dr. Johnson based his answers on his subjective discussions with plaintiff and indicated that a functional assessment would be required for objective data. Tr. at 432. Dr. Johnson reported that plaintiff suffered with chronic back, thoracic, and neck pain that has been resistant to medical procedures and medications. Plaintiff also suffers with depression and anxiety, and is incapable of performing even low stress jobs. Tr. at 430. Dr. Johnson noted that plaintiff could sit and stand for less than two hours per day. Tr. at 431. Plaintiff reported that she could not do sustained periods of work for eight hours per day. *Id*. Plaintiff reported that she needs to lay down six or more times per day for 10-30 minutes. *Id*. Plaintiff reported that she needs unscheduled breaks during an eight hour day. Id. Dr. Johnson could not assess plaintiff's ability to lift and carry weight, but indicated that she could never lift fifty pounds. *Id*. Plaintiff could rarely twist, stoop, crouch and climb stairs. Tr. at 432. Plaintiff could not climb ladders. *Id*.

To establish an entitlement to disability benefits, plaintiff is required to show that she is unable to engage in any substantial gainful activity due to a "medically determinable physical or mental impairment that can be expected . . . to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(A). *See also Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir.

5

1990). If plaintiff's impairments prevent her from performing her previous work, it must also be established that there is not work existing in significant numbers in the economy that she can perform. *See* 42 U.S.C. § 1382c(a)(3)(B). Plaintiff bears the burden of establishing her entitlement to disability benefits. In determining whether plaintiff can engage in substantial gainful activity, the social security regulations set forth a five step sequential evaluation, which was followed by the ALL in this case. *See* 20 CFR § 416.920. *See also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003). Following that sequential evaluation, if the Commissioner finds that plaintiff is not disabled at any step, then the Commissioner does not need to analyze further.

In the instant case, the ALL determined that plaintiff has severe impairments of degenerative disc disease, headaches, and adjustment disorder with mixed anxiety and depressed mood. The ALL also found that plaintiff has a history of left rotator cuff injury, but that the medical records did not show that the injury could be defined as a severe impairment. The ALL determined that plaintiff was capable of performing a range of unskilled sedentary work that would allow her to have a sit/stand option every 15 minutes in a low stress job that provides her to be off task 10 percent of the day, with avoidance of exposure to extreme cold, heights, hazards, and moving machinery. In addition the position cannot require climbing ladders, ropes and scaffolds, and may occasionally require stooping, crouching, kneeling, crawling, and climbing ramps and stairs. Plaintiff argues that the ALL erred by not properly considering the opinion of plaintiff's treatment physician, by not considering plaintiff's shoulder impairment, by using boilerplate language, and by failing to follow the vocational expert's answers to hypothetical questions.

The decision of the Commissioner shall be conclusive if it is supported by substantial evidence. *See Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986). Substantial evidence has been defined as such relevant evidence as a reasonable person might find adequate to support a conclusion.

*See Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Sixth Circuit has indicated that "the findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . this is so because there is a 'zone of choice' within which the Commissioner can act, without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Accordingly, the ALL's decision is not to be "overturned if substantial evidence, or even a preponderance of the evidence, supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALL." *See Jones v. Commissioner of Social Security*, 336 F.3d 469, 477 (6th Cir. 2003). If this Court concludes that substantial evidence does not exist to support the Commissioner's decision, the Court can reverse the decision and immediately award benefits, but only if all essential factual issues have been resolved and the record adequately establishes a claimant's entitlement to benefits. *See Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994); *Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 176 (6th Cir. 1994).

The opinions of plaintiff's treating physicians are entitled to some deference and cannot be ignored by the Commissioner. The Sixth Circuit has explained that the treating source opinions are entitled to great weight if the are supported by sufficient clinical findings and are consistent with the evidence of record. *See Blakely v. Commissioner of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009) ; *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Commissioner is not bound by the treating physicians' opinions and such opinions are entitled to great weight only if they are supported by sufficient clinical findings and are consistent with the evidence. The treating physicians' opinions are not entitled to a presumption of correctness when the record contains contrary evidence. If there is well supported contradicting evidence, the treating physicians' opinions are not entitled to controlling weight. *See Rogers v. Commissioner of Social Security*, 486 F.3d 234,

7

242 (6th Cir. 2007). Where the treating physicians' opinions are well supported by medically acceptable clinical and laboratory diagnostic tests, and are not inconsistent with other substantial evidence in the record, then the opinions are accorded controlling weight. *Wilson v. Commissioner of Social Security*, 378 F.3d 541 (6th Cir. 2007).

Plaintiff argues that the ALL failed to accept her treating physician's assessment provided in the Residual Functional Capacity form. The ALL did find that since Dr. Johnson indicated that the answers were primarily based upon plaintiff's subjective complaints, that the RFC would be given "partial weight" in the disability decision. Ultimately, the ALL, found that while the medical evidence supported the alleged symptoms, the plaintiff's claim regarding "the intensity, persistence and limiting effects of these symptoms" were not credible. Tr. at 58. The ALL noted that when Dr. Johnson continued to treat plaintiff after submitting the RFC form, he noted that plaintiff's condition was stable. Tr. at 60. The ALL carefully considered the medical evidence and carefully explained his decision in denying plaintiff's claim for disability benefits.

> The ALL explained:
>
> The undersigned notes that no surgical intervention has been recommended and the claimant has been treated with conservative treatment measures with varying amounts of relief noted. The undersigned notes that in a report, dated April 2011, Dr. Johnson reported that it was difficult for the claimant to be functional from a disability standpoint. Yet, in May 2011, consulting physician, Dr. Gause, noted the exam was unremarkable except for impaired range of motion in the cervical and lumbar spines and both shoulders.
>
> The undersigned acknowledges the residual functional capacity questionnaire from Dr. Johnson, dated April 2012. While the doctor indicated that he saw the claimant 3-4 times a year, Dr. Johnson specifically reported that the limitations were based on the claimant's statements and subjective complaints of pain. Consequently, the undersigned gives Dr. Johnson's opinions only partial weight. In fact, his subsequent progress notes reflect the claimant's pain was stable aside from a mild flare in November 2012.

The claimant has subjectively reported recurrent, chronic headaches. While the medical record does not contain objective findings to substantiate a medically determinable cause for her symptoms nor have there been any physical examination findings consistent with her subjective complaints, the undersigned views this as likely complicating her generalized pain and thus as a severe impairment.

The record also indicates that claimant has complained of depression and anxiety related to her pain. However, while review of the record reflects these were initially addressed with medication, the claimant was not [compliant] in this regard, discontinuing medications on her own. Further, on consultative exam in April 2011, Dr. Halazon reported she did not display any pain behavior. However, she was emotional and tearful and Dr. Halazon concluded she had an adjustment disorder. While she assessed the claimant's GAF at 50, suggestive of serious impairment in functioning, the claimant reported her prior day included driving, grocery shopping, putting items away, picking her daughter up from school, making dinner, doing dishes and folding laundry, which suggests she had a range of ability to function. Dr. Halazon concluded the claimant could follow 1 and 2 part directives but that her pain would interfere with her ability for concentration and focus. Dr. Halazon's limitations are reasonably accounted for in the above residual functional capacity finding.

As outlined above, the record is void of subsequent mental health treatment until February 2012, when claimant saw Dr. Olson. While the claimant complained of continuing depression and anxiety, Dr. Olson reported little evidence of abnormality and concluded she had a mood disorder due to chronic pain. While he assessed her GAF at 40, the undersigned notes that this conclusion is inconsistent with his exam findings as well as the claimant's reported activities of daily living. Further, while he recommended cognitive therapy the record is void of such treatment evidence. In fact, at the hearing, the claimant testified she is receiving no treatment in this regard, which suggests her symptoms are not as severe as alleged. She also confirmed she was not taking any medication for depression.

Moreover, the claimant's actual functioning, as indicated by her activities of daily living, also shows she is more functional than her allegations suggest. At the time the claimant filed for benefits, she described daily activities which include getting her daughter off to school, cooking, cleaning, laundry and gardening. She was independent with regard to personal care. She drove on a regular basis and shopped several times a month. Her husband confirmed these activities at that time. As previously noted when seen for consultative

>exam in 2011, she reported she maintained the ability to perform most of these tasks.  The claimant testified that her husband now does most of the household tasks and that she spends most of the day watching television.  However, upon further questioning by her attorney, she acknowledged that she is able to cook and vacuum and perform some tasks when her husband is away at work.  She indicated the ability to sit 30 minutes, stand 15 minutes, walk ½ block and lift a gallon of milk, all of which are within the aforementioned residual functional capacity finding.  Overall, the undersigned finds the claimant's allegations regarding the symptoms and limitations associated with her impairments to be less than fully credible.  Though the objective evidence does reflect that her conditions cause some work related limitations, the extent of such limitations, as subjectively reported by the claimant, is not supported by the objective medical findings, physical exam findings, and overall treatment documentation.

Tr. at 61-62.

Contrary to plaintiff's claims, the ALL did consider plaintiff's shoulder impairment and determined based upon the objective evidence that plaintiff's shoulder impairment was not a severe impairment.  Plaintiff has pointed to no medical evidence in the record that could contradict that conclusion.  In the opinion of the undersigned, the ALL properly considered plaintiff's claim of a shoulder impairment.  Further, plaintiff complains that the ALL improperly used too much "boilerplate language" in his opinion pointing to only one sentence of the opinion.  After a review of the decision, I can only conclude that the ALL's decision that plaintiff is not disabled is well explained and that there is substantial evidence in the record that supports the Commissioner's decision that plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and plaintiff's request for relief is DENIED.

Dated: June 30, 2015   /s/ TIMOTHY P. GREELEY
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE